UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

NAZARITH IVETTE GARCIA,

            Defendant.

------------------------------------X

10 Cr. 249-01 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|18|14

Sweet, D.J.

       On December 8, 2011, Nazarith Ivette Garcia (the "Defendant" or "Garcia") allocated to Count 1: Conspiracy to Defraud the U.S. with Respect to Claims (18 U.S.C. § 286), a Class C felony; Count 2: Bank Bribery of Bank Employees (18 U.S.C. § 215(a)(1)), a Class B felony; Count 3: Conspiracy to Commit Fraud in Connection with Identification Documents (18 U.S.C. § 1028(a)(3) and (f)), a Class C felony; and Count 4: Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)), a Class E felony. For the reasons set forth below, Defendant will be sentenced to a term of time served to be followed by three years' supervised release for Counts 1 and 3, three years' supervised release for Count 2 and one year supervised release for Count 4, to run concurrently on all counts. Defendant is

1

also required to pay a special assessment of $400.

**Prior Proceedings**

Defendant was named in a four-count indictment S1 10 CR 249-01(RWS) in the Southern District of New York. Count 1 charges that from 2006 through November 2009, in the Southern District of New York and elsewhere, Defendant conspired to defraud the U.S. Department of Treasury and the Internal Revenue Service, by obtaining and aiding to obtain, the payment and allowance of fraudulent claims. Count 2 charges that from 2006, through June 2007, in the Southern District of New York and elsewhere, Defendant offered and gave money to a co-conspirator, who served as a manager of a Chase Bank branch in Bronx, and provided additional funds to be distributed to other branch employees, in return for this co-conspirator's assistance in cashing fraudulently-obtained tax refund checks. Count 3 charges that from 2006 through November 2009, in the Southern District of New York and elsewhere, Defendant conspired to possess with the intent to use unlawfully and transfer unlawfully five and more identification documents, authentication features, and false identification documents, in violation of 18 U.S.C. § 1028(a)(3). Count 4 charges that from 2006 through November 2009, in the Southern District of New York and elsewhere,

2

Defendant possessed and used identification information, including names, dates of birth, and Social Security numbers of residents of Puerto Rico in preparing fraudulent tax returns using that identification information.

On December 8, 2011, the Defendant appeared before the Honorable Frank Maas and allocuted to her criminal conduct as charged, without the benefit of a plea agreement.

Sentencing is scheduled for March 20, 2014.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines:

    (1) the nature and circumstances of the offense and
        the history and characteristics of the defendant;

    (2) the need for the sentence imposed —

        (A) to reflect the seriousness of the offense,
            to promote respect for the law, and to
            provide just punishment for the offense;

      (B)   to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3)   the kinds of sentences available;

  (4)   the kinds of sentence and the sentencing range established for —

      (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

  (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

  (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

4

The Court adopts the facts set forth in the
Presentence Investigation Report ("PSR") with respect to
Defendant's personal and family history.

## The Offense Conduct

The following description draws from the PSR. The
specific facts of the underlying conduct are adopted as set
forth in that document.

Beginning in June 2007, agents with the IRS Criminal
Investigation Division (IRS-CID), U.S. Postal Inspection Service
(USPIS), Office of the Inspector General (USPS-OIG), and the FBI
became engaged in an investigation involving the fraudulent use
of social security numbers to submit false and fraudulent state
and federal tax returns.

Participants in the scheme filed fraudulent federal
tax returns, seeking tax refunds. The fraudulent returns at
issue employed stolen social security numbers assigned to
residents of Puerto Rico. The Social Security Administration
issues citizens of the Commonwealth of Puerto Rico social
security numbers. Typically, people whose mailing addresses are
in Puerto Rico have social security numbers that begin with the

5

numbers 580 through 584 and 597 through 599. Residents of Puerto Rico usually do not file tax returns with the IRS because such filing is not required as long as all of the Puerto Rico resident's income is derived from Puerto Rico sources.

The fraudulently filed tax returns claimed that the filer resided in one of the fifty states of the U.S. By using Puerto Rican social security numbers, participants in the scheme minimized the risk that a legitimate federal tax return had already been filed by the person whose identity was stolen.

Participants in the scheme obtained the federal tax refund checks, which were sent by the U.S. Treasury, through the mail. The addresses listed on the fraudulent returns were sometimes clustered. For example, on some occasions, the scam involved numerous apartments in the same building.

Participants in the scheme sometimes obtained the federal tax refund checks from U.S. Postal Service letter-carriers who agreed to steal the checks from the mail and provide them to participants in the scheme, normally for a per-check fee.

Fraudulently obtained tax refund checks were cashed

6

with the assistance of either corrupt bank employees or corrupt check cashers who did not require that the payee named on the face of the check be present at the time that the check was cashed. In some instances, fake identification documents were used to cash the fraudulently obtained tax refund checks.

Beginning in approximately 2006, Garcia, along with Judith Fulgencio ("Fulgenico"), engaged in a scheme to cash federal and New York State tax refund checks, including federal rapid refund checks, that were generated using fraudulent federal and state tax returns seeking tax refunds primarily using identification information of citizens of Puerto Rico, including names, dates of birth, and Social Security numbers.

During this same period, Defendant owned Mundo Travel Enterprises Corporation ("Mundo Travel"), a business that advertised itself as a tax preparer, travel agency, and a money remitter located at 241 East 165th Place, Bronx, NY.

During this period, Fulgencio served as a personal banker at a branch of J.P. Morgan Chase bank (the Branch), which was located nearby Mundo Travel in the Bronx, NY. Fulgencio's position with Chase authorized her to approve for cashing certain checks that did not otherwise meet Chase's standards for

acceptance, specifically, checks that were made out to parties other than the Chase customer who was submitting the checks for cashing.

In response to discovering irregularities in the way New York State and federal tax refund checks were being processed at the Branch, investigators conducted an audit of the tax refund check that had been cashed at this particular location. Investigators learned that over $1 million New York State and federal tax refund checks had been cashed without using Chase bank's standard procedures. In particular, hundreds of tax refund checks had been cashed in the names of individuals that were not Chase bank customers. On several occasions, these individuals were not physically present in the bank at the time these checks were presented and cashed. Currency Transaction Reports (CTRs) were also not generated as required by law for several of the refund checks.

Investigators discovered that Defendant brought, or directed others to bring, dozens of fraudulent tax refund checks, made out in the name of third parties into the Branch to be cashed. Fulgencio facilitated the scheme by using her authority as a personal banker at the Yankee Stadium Branch to authorize the fraudulently obtained tax refund checks to be

8

cashed by tellers. Fulgencio knew that Garcia was not entitled to the proceeds of the tax refund checks. Nonetheless, she agreed to approve the checks for cashing and arrange for the proceeds to be distributed to Defendant in exchange for tens of thousands of dollars in cash bribes. Fulgencio in turn offered thousands of dollars in cash bribes to tellers who actually performed the task of cashing the checks. In total, Garcia provided Fulgencio with approximately $50,000 in bribes.

An analysis of the Branch's computer journal entries revealed that a number refund checks had been approved by Fulgencio were for Mundo Travel, the manager of Mundo Travel, or "Ivette." On several occasions, Fulgencio instructed the teller not to generate a CTR.

Based on an analysis of the fraudulent refund checks cashed at the Branch, the IRS has determined that over 500 tax refund checks processed at the Branch were fraudulent. Several hundred of the fraudulent tax returns utilized Social Security numbers issued to Puerto Rican residents. Among these checks, at least 34 were issued to addresses in the same building that Garcia resided. In total, Defendant deposited at least $400,000 in fraudulent tax refund checks that were under the names of various individuals into a bank account maintained under the

name of her business, Mundo Travel. Over 60 tax refund checks deposited by Defendant were issued from returns that used Puerto Rican identity information.

On November 17, 2009, Garcia was arrested for her involvement in this offense.

On January 30, 2012, Fulgencio was arrested for her involvement in this offense. On August 12, 2012, Fulgencio appeared before the Honorable Robert P. Patterson and pleaded guilty as charged in Count 1 of 12 CR 68-01(RPP) (Conspiracy to Commit Theft of Federal Funds, Bribe Offering and Bribe Solicitation). On January 29, 2013, Fulgencio was sentenced to Time Served, to be followed by a term of three years' supervised release and a $100 special assessment.

During the life of this offense, Garcia is responsible for fraudulently receiving approximately $2 million in federal and New York State refund checks.

**The Relevant Statutory Provisions**

For Count 1, the maximum term of imprisonment is 10 years, pursuant to 18 U.S.C. § 286. For Count 2, the maximum

term of imprisonment is 30 years, pursuant to 18 U.S.C.
§ 215(a). For Count 3, the maximum term of imprisonment is 15
years, pursuant to 18 U.S.C. § 1028(a)(3) and (f). A mandatory
term of two years' imprisonment is required for Count 4,
pursuant to 18 U.S.C. § 1028A(a)(1).

For Counts 1 and 3, if a term of imprisonment is
imposed, the Court may impose a term of supervised release of
not more than three years, per count, pursuant to 18 U.S.C.
§ 3583(b)(2). For Count 2, if a term of imprisonment is imposed,
the Court may impose a term of supervised release of not more
than five years, pursuant to 18 U.S.C. § 3583(b)(1). For Count
4, if a term of imprisonment is imposed, the Court may impose a
term of supervised release of not more than one year, pursuant
to 18 U.S.C. § 3583(b)(3). Such terms of supervised release run
concurrently, pursuant to 18 U.S.C. § 3624(e).

For Counts 1 and 3, the Defendant is not eligible for
probation because she is being sentenced at the same time to a
term of imprisonment on a different count or case, per count,
pursuant to 18 U.S.C. § 3561(a)(3). For Count 2, the Defendant
is not eligible for probation because the instant offense is a
Class B felony, pursuant to 18 U.S.C. § 3561(a)(1). For Count 4,
the Defendant is not eligible for probation because the instant

11

offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 18 U.S.C. § 1028(A).

For Counts 1 through 4, the maximum fine is $4 million (twice the pecuniary loss), per count, pursuant to 18 U.S.C. §§ 286, 215(a)(1), 1028(a)(3), and 1028A. Full restitution to the victim in this case is required under 18 U.S.C. § 3663A and 18 U.S.C. § 3664. As a result of committing the instant offense, pursuant to 18 U.S.C. § 982, Garcia shall forfeit to the United States any property which represents the amount of proceeds obtained by the defendant's participation in the offense.

**The Guidelines**

The November 1, 2012 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 through 3 are grouped pursuant to § 3D.1(b). Accordingly, pursuant to § 3D1.3(a), the offense level

12

applicable to this Group is the count which produces the highest offense level. An analysis of Counts 1 through 3 indicates that Counts 1 and 3 will produce the higher total offense level; therefore, § 2B1.1 will be used to compute the guidelines.

Count 4 charges a violation of 18 U.S.C. § 1028A, which carries a mandatory sentence of two years' imprisonment as required by statute. Therefore, the applicable guideline sentence is two years, pursuant to § 2B1.6.

The guideline for a violation of 18 U.S.C. § 286 and 18 U.S.C. § 1028(a)(3) and (f) is found in § 2B1.1. Accordingly, the base offense level is six, pursuant to § 2B1.1(a)(2).

Pursuant to § 2B1.1(b)(1)(I), a 16-level enhancement is warranted, as the loss amount is between $1,000,000 but less than $2,500,000.

Based on the Defendant's allocution, the Defendant has shown recognition of responsibility for the offense. Because of the Defendant's timely notification of her intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to § 3E1.1(a) and (b), the

13

offense is reduced three levels.

Accordingly, the total offense level is 19.

The Defendant has no prior criminal convictions. Therefore, the Defendant has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 19 and a Criminal History Category of I, the guideline range for imprisonment is 30 to 37 months. With the consecutive 24 months for the 1028A conviction, the range becomes 54 to 61 months.

For Counts 1 and 3, the guideline range for a term of supervised release is one to three years, per count, pursuant to § 5D1.2(a)(2). For Count 2, the guideline range for a term of supervised release is at least two years but not more than five years, pursuant to § 5D1.2(a)(1). For Count 4, the guideline range for a term of supervised release is one year, pursuant to § 5D1.2(a)(3). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

14

For Counts 1 and 3, the Defendant is not eligible for probation because she is being sentenced at the same time to a term of imprisonment on a different count or case, per count, pursuant to § 5B1.1(b)(3). For Count 2, the Defendant is not eligible for probation because the instant offense is a Class B felony, pursuant to § 5B1.1(b)(1). For Count 4, the Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is from $6,000 to $16,000,000 pursuant to § 5E1.2(c)(3) and (4)(A). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,407.78 to be used for imprisonment, a monthly cost of $286.11 for supervision, and a monthly cost of $2,180.27 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full

15

amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A.

Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the Defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is not warranted in the instant case.

16

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553(2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.

The Defendant's immediate and substantial cooperation following her arrest, provision of information on her co-conspirators criminal conduct and participation in several audio and visually recorded meetings with individuals involved in conduct similar to the instant offense that placed her in substantial risk are considerations to be taken into account.

Taken into account all of the above, a downward departure from the Guidelines sentence is warranted.

**The Sentence**

For the instant offense, Garcia will be sentenced to Time Served to be followed by three years' supervised release for Counts 1 and 3, three years' supervised release for Count 2 and one year supervised release for Count 4, to run concurrently

17

on all counts.

As mandatory conditions of her supervised release, Defendant shall:

1) Not commit another federal, state or local crime;

(2) Not illegally possess a controlled substance;

(3) Not possess a firearm or destructive device;

(4) Cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

The Defendant shall provide the probation officer with access to any requested financial information.

18

The Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the Defendant is in compliance with the installment payment schedule.

The Defendant shall submit her person, residence, place of business, vehicle, or any other premises under her control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody. The Defendant is to be supervised by the district of residence.

It is further ordered that the Defendant shall pay to the United States a special assessment of $400, which shall be due immediately. The Defendant does not have the ability to pay a fine and recommend the fine in this case is waived.

19

As a result of Garcia's criminal actions, she caused losses totaling at least $2 million the Internal Revenue Service and the New York State Department of Taxation and Finance. Pursuant to 18 U.S.C. § 3664, the Court will defer issuing an order of restitution for 90 days following the date of sentence, to allow the Government to provide the Court with full information concerning the victims and amount of restitution owed by the Defendant and her co-defendants.

As a result of committing the instant offense, the Defendant shall forfeit to the United States any and all proceeds obtained from her participation in the offense.

The Defendant is viewed as a good candidate for voluntary surrender. She has kept all court appearances and has been in compliance with all terms and conditions of her pretrial release. She is not viewed as a flight risk or a danger to the community.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for March 20, 2014.


It is so ordered.


New York, NY
March   18 , 2014

_____
ROBERT W. SWEET
U.S.D.J.